# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICARDO A. GARCIA VALLES**
**Petitioner,**

**v.**                                          **Case No. 11-C-0811**

**LT. SHANNON RAWSON,**
**Kenosha County Detention Center**
**Respondent.**

## DECISION AND ORDER

Petitioner Ricardo A. Garcia Valles is a Mexican citizen who has been living in the United States since he was two years old. (He is now nineteen.) On June 29, 2010, he was convicted in Wisconsin state court of possession of marijuana, sentenced to probation, and released. On July 25, 2011, Garcia Valles was again arrested for possession of marijuana. This time, he was released within forty-eight hours on a signature bond. Immediately upon his release from state custody on the signature bond, Garcia Valles was taken into custody by Immigration and Customs Enforcement ("ICE"). At the same time, ICE initiated removal proceedings against Garcia Valles, alleging that he was admitted to the United States illegally and that he is removable because he committed a controlled-substance violation – specifically, the offense that led to the June 2010 conviction for possession of marijuana.

Garcia Valles is currently being detained without bond pursuant to the mandatory detention provisions of the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1226(c). Those provide that the Attorney General must take into custody any alien who committed certain offenses (including drug offenses) "when the alien is released." They

also provide that, with one exception not relevant here, such an alien is ineligible for release on bond pending a decision on removal. Garcia Valles disputes that § 1226(c) renders him ineligible for bond and has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He seeks either his immediate release or an individualized bond determination pursuant to the non-mandatory detention provisions of the INA. See 8 U.S.C. § 1226(a). I have subject matter jurisdiction over this case. See Denmore v. Kim, 538 U.S. 510, 516-17 (2003); Gonzalez v. O'Connell, 355 F.3d 1010, 1014-15 (7th Cir. 2004).

According to the Supreme Court, Congress adopted § 1226(c) "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." Denmore, 538 U.S. at 517-18. Congress had before it evidence that a major cause of the problem was the INS's failure to detain criminal aliens during their removal proceedings. Id. at 519. At the time, the Attorney General had broad discretion to conduct individualized bond hearings and to release criminal aliens from custody during their removal proceedings when those aliens were determined not to present an excessive flight risk or threat to society. Id. In practice, however, the INS faced severe limitations on funding and detention space, and these considerations affected its release determinations. Id. As a result, more than 20% of deportable criminal aliens failed to appear for their removal hearings. Id. Studies presented to Congress suggested that the best way to ensure the removal of criminal aliens would be to detain them during their removal proceedings. Id. at 521. Congress thus enacted § 1226(c), requiring the Attorney General to take certain deportable criminal aliens into custody and hold them without bond pending the completion of their removal proceedings. Id.

Section 1226(c) consists of two paragraphs. The first paragraph commands the Attorney General to take into custody certain deportable criminal aliens "when the alien is released." 8 U.S.C. § 1226(c)(1). The second paragraph states that the Attorney General may release "an alien described in paragraph (1)" only if he or she decides that the release of the alien is necessary for certain witness-protection matters. 8 U.S.C. § 1226(c)(2). The full text of § 1226(c) is reproduced below.

**(c) Detention of criminal aliens**

> **(1) Custody**
>
> The Attorney General shall take into custody any alien who–
>
> > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> >
> > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> >
> > (C) is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
> >
> > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> **(2) Release**
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of

property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C.A. § 1226(c) (West 2005) (emphasis added, footnote omitted).

The issue raised by Garcia Valles in his habeas petition is whether he is "an alien described in paragraph (1)." He contends that he is not, because he was not taken into custody when he was released from state custody in connection with the June 2010 marijuana conviction. Instead, he was taken into custody more than a year after his release, following his July 2011 arrest.[1] ICE agrees that Garcia Valles was not taken into custody when he was released from state custody in 2010. However, it contends that an alien is "an alien described in paragraph (1)" even if the Attorney General did not take that alien into custody when he or she was released from state custody. Under ICE's interpretation of the statute, which is the interpretation adopted by the Board of Immigration appeals ("BIA"), see In re Rojas, 23 I&N Dec. 117, 125 (BIA 2001), "an alien described in paragraph (1)" is simply any alien taken into custody who is inadmissible or deportable for the reasons enumerated in § 1226(c)(1)(A)-(D), provided that the alien was released from custody in connection with an enumerated offense after the effective date of the mandatory detention provisions (which Garcia Valles was).[2] ICE contends that the BIA's interpretation

_____

[1] ICE does not contend that the July 2011 arrest subjects Garcia Valles to mandatory detention.

[2] The proviso concerning release after the effective date relates to the BIA's prior interpretation of § 1226(c)(2), which it has recently abandoned. See In re Garcia Arreola, 25 I&N Dec. 267 (BIA 2010). Under the prior interpretation, an alien was subject to mandatory detention if he or she had been convicted of an enumerated offense and released before the mandatory detention provisions went into effect, so long as the alien was released from some custody (even custody unrelated to the enumerated offense) after those provisions went into effect. See In re Saysana, 24 I&N Dec. 602 (BIA 2008). Under

4

controls because § 1226(c) is ambiguous and the court must defer to the agency's interpretation pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Garcia Valles contends that § 1226(c) is not ambiguous and that therefore Chevron does not apply.[3]

At the outset of my analysis, I note that the parties agree that the first paragraph of § 1226(c) is unambiguous. They agree that this paragraph imposes a duty on the Attorney General to take an alien who has committed one of the enumerated offenses into custody when that alien is released from the custody associated with the enumerated offense. Thus, the parties agree that the Attorney General should have taken Garcia Valles into custody immediately upon his release from state custody on June 29, 2010. They also agree that had the Attorney General taken Garcia Valles into custody immediately upon his release, he would have been "an alien described in paragraph (1)" and subject to

---

the BIA's present interpretation, the post-effective-date release must relate to the enumerated offense.

[3]Several other district courts have addressed the precise question under review in this case. Some have held that § 1226(c) is unambiguous and that an alien is not "an alien described in paragraph (1)" if he or she was not taken into custody "when the alien [was] released." See, e.g., Hosh v. Lucero, No. 1:11-cv-464, 2011 WL 1871222, at *3 (E.D. Va. May 16, 2011); Bracamontes v. Desanti, No. 2:09cv480, 2010 WL 2942760 (E.D. Va. June 16, 2010); Louisaire v. Muller, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010); Khodr v. Adduci, 697 F. Supp. 2d 774 (E.D. Mich. 2010); Scarlett v. Dep't of Homeland Sec., 632 F. Supp. 2d 214, 218-20 (W.D.N.Y. 2009). Others have held that the provision is ambiguous and have deferred to the BIA's interpretation pursuant to Chevron. See Gomez v. Napolitano, No. 11 Civ. 1350, 2011 WL 2224768 (S.D.N.Y. May 31, 2011); Sulayao v. Shanahan, No. 09 Civ. 7347, 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009); Serrano v. Estrada, No. 3-01-CV-1916-M, 2002 WL 485699, at *2-3 (N.D.Tex. March 6, 2002); Saucedo-Tellez v. Perryman, 55 F. Supp. 2d 882, 884-85 (N.D. Ill. 1999).

mandatory detention. The alleged ambiguity arises from the fact that the Attorney General did not take Garcia Valles into custody immediately upon his release.[4]

As noted, Garcia Valles's argument is that the text of the statute is clear and that an alien is not "an alien described in paragraph (1)" when the Attorney General does not take him or her into custody immediately upon release. If I accepted this argument, I would essentially be holding that when the Attorney General fails to comply with the first paragraph of § 1226(c), he must also fail to comply with the second paragraph if he eventually takes the deportable criminal alien into custody. As discussed, however, in imposing mandatory detention, Congress wanted to end the practice of releasing deportable criminal aliens on bond and make sure that the Attorney General detained such aliens pending a decision on removal. Although Congress also wanted to make sure that the Attorney General took such aliens into immigration custody immediately upon their release from criminal custody, this does not mean that Congress wanted the applicability of mandatory detention to turn on whether the Attorney General successfully complied with the immediate-custody command. Accord Gomez, 2011 WL 2224768, at *3 ("Permitting certain individuals to avoid mandatory detention simply because ICE fails to immediately take them into immigration custody runs counter to . . . congressional intent.").

In any event, the text of the statute is not as clear as Garcia Valles contends. It is reasonable to interpret "an alien described in paragraph (1)" as referring to any alien who should have been taken into immediate custody in accordance with the command of paragraph (1), whether or not that alien was, in fact, taken into such immediate custody.

---

[4]No one has explained why Garcia Valles was not taken into custody immediately upon his release in June 2010.

This is because it is reasonable to conclude that the description of the alien in paragraph (1) does not include the phrase "when the alien is released." Indeed, this seems to be the most natural reading of the statute. The words in between "shall take into custody" and "when" provide the description of the alien, and the phrase "when the alien is released" indicates the time at which the Attorney General "shall take" the described alien into custody. Paragraph (2) states that mandatory detention applies to "an alien described in paragraph (1)" and does not contain any language suggesting that its application is contingent on the Attorney General's compliance with the immediate-custody requirement of paragraph (1). Thus, it is reasonable to interpret paragraph (2) as requiring mandatory detention when the Attorney General eventually takes an alien described in paragraph (1) into custody. The Board of Immigration Appeals has adopted this reasonable interpretation, see Rojas, 23 I&N Dec. at 125, and therefore I must defer to it pursuant to Chevron.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 7th day of October 2011.

s/_____
LYNN ADELMAN
District Judge